CANADY, C.J.,
dissenting.
As Justice Polston’s dissent cogently explains, there is no basis for the majority’s decision. I join fully in that dissent.
The petitioner strikingly has failed to show any specific action required by law that was prevented by the implementation of the executive orders at issue here. In the absence of such a showing, the majority nonetheless rules in favor of the petitioner by imposing unprecedented and unwarranted restrictions on the Governor’s constitutional authority to supervise subordinate executive branch officers. In doing so, the majority’s decision insulates discretionary executive policy decisions with respect to rulemaking from the constitutional structure of accountability established by the people of Florida. I strongly dissent from this ill-conceived interference with the constitutional authority and responsibility of Florida’s Governor.
It is elementary that the Administrative Procedure Act (APA), §§ 120.50-891, Fla. Stat. (2011), and other pertinent statutes do not preordain the substance of all decisions made by agencies regarding rule-making. The APA and other statutes impose certain constraints and requirements, but an area of executive policy discretion exists with respect to rulemaking. The majority’s decision does not take seriously this reality that the rulemaking process involves certain discretionary policy choices by executive branch officers within the parameters established by the APA and other pertinent statutes. Nor does the majority come to terms with the absence from Florida law of any restriction on the authority of the Governor to supervise and control such policy choices made by subordinate executive branch officials with respect to rulemaking.
The Governor’s right to exercise such supervision and control flows from the “supreme executive power” which is vested in the Governor by article IV, section 1(a) of the Florida Constitution, together with the Governor’s power under article IV, section 6 of the Florida Constitution, to appoint executive department heads who serve at the Governor’s pleasure. The Governor’s “supreme executive power,” of course, does not give the Governor the right to direct subordinate executive officers to disobey the requirements of law. But if “supreme executive power” means anything, it must mean that the Governor can supervise and control the policy-making choices — within the range of choices permitted by law — of the subordinate executive branch officers who serve at his pleasure.
Neither the petitioner nor the majority identify any provision of law containing an express restriction on the Governor’s power to supervise and control the exercise of discretion by subordinate officers with re *718 spect to rulemaking. The majority’s inference of such a restriction flies in the face of the constitutional provisions which vest “supreme executive power” in the Governor and authorize the Governor to appoint executive department heads who “serve at his pleasure.” Given the constitutional structure establishing the power and responsibilities of the Governor, it is unjustified to conclude — as does the majority— that by assigning rulemaking power to agency heads, the Legislature implicitly divested the Governor of his supervisory power with respect to executive officials who serve at his pleasure.
In issuing the executive orders, the Governor acted lawfully to supervise the agency heads who are responsible to him and for whom he is responsible. The quo war-ranto petition should be denied.
POLSTON, J., concurs.